## Habecker's Estate (No. 2).

OPINION BY RICE, P. J., July 20, 1910:

*Taxation—Collateral inheritance tax—Decedents' estates—Payment of tax out of residuary.*

1. An executor is justified in paying a collateral tax out of the residuary estate, where he is authorized by the will "to sell sufficient property or proceeds of crops to pay any debts and expenses collateral tax, and legacies bequeathed, before any division is made of said rents, issues and profits;" and this is the case although in a later clause in the will testatrix has given real estate to her trustees "to rent, farm or crop . . . . to the best advantage, and from the rents, issues and profits thereof (1) to pay all taxes, repairs and insurance, and keep the properties in good condition; (2) to divide the balance," etc.

2. In such a case the word "taxes" in the later clause is to be construed as meaning local taxes, and not to include the collateral tax.

Argued Nov. 10, 1909.   Appeal, No. 177, Oct. T., 1909, by Henry H. Bender et al., from decree of O. C. Lancaster Co., Feb. T., 1908, No. 12, dismissing exceptions to adjudication in Estate of Mary Habecker, deceased. Before Rice, P. J., Henderson, Morrison, Orlady, Head, Beaver and Porter, JJ.   Affirmed.

Exceptions to adjudication.   Before Smith, P. J.
The facts appear by the opinion of the Superior Court.

*Error assigned* was in dismissing exceptions to the adjudication.

*J. W. Denlinger* and *C. Eugene Montgomery*, for appellants.—A case squarely on the point which decides this question is Brown's Est., 208 Pa. 161.

*Hugh R. Fulton* and *Coyle & Keller*, for appellees.— The legacies and devises were relieved from the tax: Horter's Est., 1 Pearson, 424; Cummings's Est., 12 Pa. C. C. Rep. 45; Lea's Est., 194 Pa. 524; Shippen v. Burd, 42 Pa. 461; Byne v. Currey, 2 Crompton & Meeson, 603; Williams v. Hughes, 24 Beavan, 474; Barksdale v. Gilliat, 1 Swanston's Ch. 562.

Opinion by Rice, P. J., July 20, 1910:

The matter complained of in this appeal is the refusal of the orphans' court, in the adjudication of the account of the executors of the personal estate of the testatrix as to which she died intestate, to surcharge them with the collateral inheritance taxes paid by them (a) on two legacies and (b) on the real estate devised in trust.   They assert as their authority for these payments the following clause of the will: "The executors and trustees are hereby further authorized and empowered to sell sufficient property or proceeds of crops to pay any debts and expenses, collateral tax, and legacies bequeathed, before any division is made of said rents, issues, and profits."

Unless otherwise directed by the provisions of the will or the intention of the testator to the contrary is plainly inferable therefrom a collateral or succession tax is chargeable against and payable out of the legacies by the respective legatees: Brown's Est., 208 Pa. 161. This statement of the law clearly implies, if authority be needed for so plain a proposition, that the intention of the testator, plainly inferable from his will, to impose the burden upon his residuary estate in relief of the legatees and devisees, will be carried into effect. Here the residuary personal estate was ample for the purpose, and we entertain no doubt that, so far as payment of the tax on the legacies is concerned, the executors acted in accordance with the intention of the testatrix plainly manifested in the above clause of her will.

But it is contended that in paying the collateral inheritance tax on the corpus of the real estate devised in trust out of this fund derived from the sale of the residuary personal estate the executors contravened the rule laid down in Brown's Est., 208 Pa. 161, which is thus stated in the syllabus: "Where the corpus of an estate is committed to the executors in trust to collect the income, 'and after taking any and all necessary expenses, to divide the said net income in equal shares among' certain persons named for life, the collateral inheritance tax, New York state transfer tax and United States war tax are not payable out of the principal of the estate, but are to be deducted by the trustees from the gross income, after which the net income is to be divided in equal shares among the life tenants." This decision was put upon the ground that the direction to "deduct any and all expenses" was broad enough to include the payment of the taxes charged upon the legacies and that it was apparent from a proper construction of the will "that the testator, whatever inequality it may produce, intended that the tax should be charged against the income of the estate before distribution should be made to the legatees." In the will under consideration the language of the trust is: "To rent, farm, or crop said farms and the Mill property to the best advantage, and from the rents, issues and profits thereof to pay (1) all taxes, repairs and insurance,

and keep the properties in good condition; (2) to divide the balance, after deducting necessary expenses and compensation, into three equal parts or shares." If this clause stood alone it might be argued with plausibility that the collateral inheritance taxes, as well as other taxes, were intended to be deducted from the gross income of the trust estate before distribution of the net rents, issues and profits. But the clause does not stand alone, and in arriving at the intention of the testatrix all provisions of the will pertinent to the question must be considered. Thus viewing the will, it is seen that the testatrix had in mind the collateral inheritance tax, which in one clause of her will she ranked with debts, expenses, and legacies, and taxes, which in another clause she ranked with repairs and insurance of the trust property. Both clauses of the will may be reconciled and carried into effect by construing the latter to relate to ordinary local taxes on the property. The immediate context tends to show that this is the sense in which she used the term, and this conclusion is strengthened by a consideration of the general and unqualified provision relative to the collateral inheritance tax. The learned judge of the orphans' court well says: "From the debts and expenses there could have been no escape even if the testatrix had made no reference to them. There were ample funds with which to pay the legacies, and a special provision for them was unnecessary, but recognizing a possibility of a change in her estate between the time of the writing of her will and her death, and being especially anxious to have them paid, she provided particularly for them. Quite as prominent in her mind was the collateral inheritance tax, and quite as certain her intention to provide for its payment. She puts debts, expenses, legacies and collateral inheritance tax in the same class, and her direction is to pay them. How is it possible to take any other meaning out of her words? There was no occasion to even refer to this tax unless she had some purpose relating to it. What was it? What other possible thing could it have been if it was not to pay it? Not only did she intend it to be paid, but 'further authorized' the use of the proceeds of the crops for that purpose, or, if necessary, even to sell

'property.' Like debts and expenses it was to be paid even if 'property,' manifestly real estate, had to be sacrificed for that purpose." This view of the case commends itself.

The case differs in essential facts from Brown's App., and for that reason a different result is reached; but in holding that the clause relative to collateral inheritance taxes authorized the executors to pay them out of the proceeds of the personalty, we apply the principle of that case, namely, that the intention of the testatrix plainly inferable from her will is to be carried into effect.

The decree is affirmed at the costs of the appellant.